**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEROME REED, | Hon. Dennis M. Cavanaugh |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 07-1804 |
| JTH TAX, INC D/B/A LIBERTY TAX SERVICE, | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") to transfer venue pursuant to 28 U.S.C. § 1404(a). No oral arguments were heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After carefully considering the submissions of the parties and for the following reasons, the motion to transfer venue is granted.

**I. Background**

    **A. Procedural History**

Jerome Reed ("Plaintiff") filed a complaint in the Superior Court of New Jersey, Middlesex County, on November 20, 2006. Plaintiff served the complaint by certified mail on March 29, 2007, and Liberty removed the case to this Court on April 17, 2007. On April 12, 2007, Liberty commenced an action in the United States District Court for the Eastern District of Virginia seeking affirmative relief from Plaintiff.

**B. Factual History**

Liberty is a Delaware corporation that grants franchises under the Liberty Tax trademarks for the preparation and filing of tax returns on behalf of taxpayers. (Declaration of Cory Hughes ("Hughes Decl."), ¶ 3.) Liberty's principal place of business is Virginia Beach, Virginia. (Hughes Decl., ¶ 3.) Plaintiff entered into a franchise agreements with Liberty and commenced operation of a Liberty Tax Service in New Jersey. (Declaration of Bonnie Via, ("Via Decl."), ¶ 3.)

Before entering a franchise agreement, Liberty gives a Uniform Franchise Offering Circular ("UFOC") to prospective franchisees. (Declaration of June Montalbano, ("Montalbano Decl."), ¶ 5.) The UFOC begins with a note from the Federal Trade Commission to prospective franchise owners telling them to study and read the information in the packet carefully. (Montalbano Decl., Exh.1, 1). In Item 17 of the UFOC, there is a choice of forum provision that states "[a]ll suits must be tried in Virginia (except as modified by Addenda to this Offering Circular)." (Montalbano Decl., Exh 1, 27.) Item 17 also contains a choice of law provision stating "Virginia law governs (except as modified by Addenda to this Offering Circular)." (Montalbano Decl., Exh 1, 27.) Plaintiff returned to Liberty an Acknowledgment of Receipt of UFOC on Februrary 14, 2004. (Montalbano Decl., ¶ 8, Exh. 2.)

Liberty also sends prospective franchisees a franchise agreement and requires them to keep the agreement for five business days before returning a signed copy. (Montalbano Decl., ¶ 6.) The franchise agreement contains a "Governing Law" section which reads, in pertinent part, as follows:

> **b. Jurisdiction and Venue.** In any suit brought against us, including our present

>and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located near our National Office (presently the U.S. District in Norfolk, Virginia). . .

(Montalbano Decl., ¶ 11, Exh. 4, 14.)  Plaintiff returned to Liberty two Acknowledgment of Receipt of Completed Franchise Agreement on April 1, 2004.  (Montalbano Decl., ¶ 8, Exh. 3.)

Plaintiff entered into his first franchise agreement with Liberty on April 26, 2004.  (Montalbano Decl., ¶ 10, Exh. 4.)  Plaintiff entered into similar franchise agreements with Liberty between 2004 and 2005.  (Montalbano Decl., ¶ 10.)  After entering his initial franchise agreement, Plaintiff traveled to Virginia Beach for a week long Effective Operations training to learn how to start and run his Liberty Tax Service office.  (Hughes Decl., ¶ 7.)

Pursuant to the terms of the Franchise Agreement, Plaintiff opened a Liberty Tax Service Office in Clifton, New Jersey.  (Via Decl., ¶ 3.)  As a franchisee, Plaintiff "submitted regular reports to Liberty's corporate office in Virginia, corresponded with Liberty's employees in Virginia, received technological, tax, and operational support from Liberty's employees in Virginia and made payments under the Franchise Agreement to Liberty's corporate office in Virginia."  (Hughes Decl., ¶ 7.)

On April 4, 2006, Liberty sent a notice to Plaintiff because he allegedly violated the terms of his Franchise Agreements by owing money to Liberty which was more than 30 days past due.  (Via Decl., ¶ 4.)  Plaintiff did not reconcile his debt that amounted to $10, 626.80.  (Via Decl., ¶ 5); (Declaration of Juan Gundran, ("Gundran Decl."), ¶ 5.)  Due to this debt, Liberty terminated Plaintiff's Franchise Agreements.  (Via. Decl., ¶ 6.)  Liberty sent Plaintiff a letter notifying him of the termination and his post-termination obligations.  (Via. Decl., ¶¶ 6, 7.)  Plaintiff alleges,

in his Complaint, that Liberty did not disclose the amount of money Plaintiff owed and Liberty ignored Plaintiff's requests for this figure. (Compl. Count 2 ¶ 2.)

## II. Standard of Review for Motion to Transfer Venue

Pursuant to 28 U.S.C. § 1404(a), a district court has discretion to transfer an action to any district where it might have been brought if the transfer is "[f]or the convenience of the parties and the witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). "The purpose of section 1404(a) is to avoid the waste of time, energy and money, and in addition, to safeguard litigants, witnesses, and the public against avoidable inconvenience and expense." Tischio v.Bontex, Inc., 16 F.Supp.2d 511, 518 (D.N.J. 1998).

When deciding whether to transfer an action, the parties' choice to enter a forum selection clause is "a significant factor that figures centrally into the district court's calculus." Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Forum selection clauses are presumptively valid and enforceable. See Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech. AG, 440 F.Supp.2d 357, 362 (D.N.J. 2006). The presumption is rebutted only when the party opposing enforcement of the forum selection provision can make a "strong showing" that the clause is "unreasonable." Cadapult Graphic Sys., Inc. v. Tektronix, Inc., 98 F.Supp.2d 560, 564-65 (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (finding that forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances")). A forum selection clause is "unreasonable" only when:

> the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) the enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in

litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

Cadapult Graphic Sys., Inc., 98 F.Supp.2d at 565 (citing Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3d Cir. 1983); Union Steel America Co. v. M/V Sanko Spruce, 14 F.Supp.2d 682, 686 (D.N.J. 1998)).

Even if the forum selection clause is controlling, the Court must continue it's analysis and consider several private and public factors. Schering Corp. v. First Databank, Inc., 479 F.Supp.2d 468, 471 (D.N.J. 2007). The private factors considered are: (1) plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses; (4) cost of obtaining willing witnesses; (5) possibility of viewing evidence and/or premises at issue; (6) possibility of a jury view of the premises, if appropriate, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947). The public interest factors considered are: (1) the relative congestion of court dockets; (2) in cases where the litigation is not closely tied to the chosen forum, the burden of imposing jury duty on residents of the forum; (3) in cases where the litigation is closely tied to the chosen forum, the interests of the forum in the outcome of the litigation; and the appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case. Id.

### III.  Analysis

#### A. The Forum Selection Clause

Forum selection clauses are presumptively valid and enforceable. See Int'l Bus. Software Solutions, Inc., 440 F.Supp.2d at 362. The presumption is rebutted only if the party opposing

enforcement of the forum selection provision can make a "strong showing" that the clause is "unreasonable." Cadapult Graphic Sys., Inc. v. Tektronix, Inc., 98 F.Supp.2d at 564-65 (citations omitted). Plaintiff, in the instant case, did not submit a brief or any other evidence that renders the forum selection clause "unreasonable." Plaintiff's complaint merely alleges in Count Four that "the terms of the contract between the parties were unconscionable, unfair, and oppressive." Compl. Count 2 ¶ 2. Furthermore, the Plaintiff's Complaint does not even mention the forum selection clause. Id. As such, this Court cannot conclude that Plaintiff met his burden to overcome the presumption that the forum selection clause is valid.

### B. 28 U.S.C. § 1404(a) Factors

#### 1. Private Factors

As mentioned above, pursuant to 28 U.S.C. § 1404(a), the private factors considered are: (1) plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses; (4) cost of obtaining willing witnesses; (5) possibility of viewing evidence and/or premises at issue; (6) possibility of a jury view of the premises, if appropriate, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947). The private interests weigh in favor of transfer.

In the Third Circuit, a plaintiff's choice of forum is traditionally accorded deference. Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995);. However, "such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." Id. Thus, "[w]here the forum selection clause is valid . . . the plaintiffs bear the burden of

demonstrating why they should not be bound by their contractual choice of forum." Id. As noted above, Plaintiff did not submit a brief or other evidence to the Court. The Plaintiff merely alleges "the terms of the contract between the parties were unconscionable, unfair, and oppressive." (Compl. Count 2 ¶ 2.) Without more than an unsupported conclusion that the contract that contains the forum selection clause is unconscionable, this Court cannot accord Plaintiff's choice of forum deference.

This Court explained that to determine the second factor the, "relative ease of access to the sources of proof," the court should initially determine what is the plaintiff's cause of action, what are the anticipated claims and defenses, and whether the evidence cited by the parties is relevant to these. Tischio v. Bontex, Inc., 16 F.Supp.2d 511, 522 (D.N.J. 1998).

Plaintiff's claims are based in contract. Plaintiff alleges breach of contract, breach of the implied covenant of good faith and fair dealing, and that the terms of the contract were unconscionable. (Compl. Count 2-4.) Plaintiff further claims that Liberty engaged in unfair practices while licensing a franchise. (Compl. Count 1.) Liberty claims "original documents relevant to the this litigation are located at Liberty's headquarters in Virginia Beach, including the Franchise Agreements, which form the basis of the dispute between the parties." (Def's Br. at 5.) However, this Court holds, where "documents can be transported and/or easily photocopied, their location is entitled to little weight." Clark v. Burger King Corp., 255 F.Supp.2d 334, 339 (D.N.J. 2003) (citing In re Laidlaw Securities Litigiation, 1991 WL 170837 at *2 (E.D.Pa. Aug. 27, 1991)). As such, the ease of access to sources of proof, which is primarily in the form of a contract and other paper records, does not weigh in favor of or against transfer.

The convenience of the witnesses is a particularly significant factor. Euro Classics, Inc. v. Exel Global Logistics, Inc., No. 06-CV-423 (DMC) 2006, WL 1344098, at *4 (D.N.J. May 16, 2006) (citing Kahhan v. City of Fort Lauderdale, 566 F.Supp. 736, 739 (E.D.Pa.1983)). Virginia affords easier access to relevant evidence because important witnesses work and live near Liberty's primary place of business in Virginia. Liberty anticipates calling Virginia Beach Liberty employees to support the evidence in its case. (Def's Br. at 7.) Liberty's brief mentions three specific employees that reside in Virginia. (Def's Br. at 7.) Each of these witnesses has significant information relevant to the case. (Def's Br. at 7.) This information includes Mr. Reed's debt of $10,469.75 dollars, the authenticity of Mr. Reed's franchise agreements, the termination of Mr. Reed and his post-termination obligations, and that Liberty sent Mr. Reed a notice to cure and termination letter. (Def's Br. at 7.) As such, this factor weighs heavily in favor of transferring the matter to Virginia.

Third, there is no need to discuss the availability of a compulsory process to obtain the testimony of unwilling witnesses because Defendants have not suggested that witnesses would be unwilling to testify at trial. Even if a witness were unwilling to testify at trial, Defendants have not suggested that a videotaped deposition would be an insufficient substitute for live testimony. This factor does not bear on the decision to transfer. See Caruthers v. Amtrak, 1995 U.S. Dist. LEXIS 8740, at *8 (S.D.N.Y. June 26, 1995) ("The non-party witnesses may not be subject to compulsory process in New York, however, this factor is not controlling since there was no suggestion by Defendant that specific non-party witnesses could not or would not appear at a trial in New York").

Fourth, the cost of obtaining testimony from willing witnesses does not bear on the

decision to transfer because the parties did not provide evidence on this issue. Workman v. Johnson & Johnson, Janssen L.P., No. 06-2523 (DMC), 2007 WL 1850907, at *3 (D.N.J. June 26, 2007). The Defendant merely argues that "[i]t would be extremely inconvenient, costly, and disruptive to Liberty's corporate operations to have to transport its employees to litigate cases all across the country." (Def's Br. at 5) (citing Hughes Decl., ¶ 8). As such, without providing any evidence to substantiate this argument, this factor does not weigh in favor or against transfer.

**2. Public Factors**

While not the most important factor in a motion to transfer venue, the relative congestion of the court dockets favors transfer. See Park Inn Intern., L.L.C. v. Mody Enterprises, 105 F.Supp.2d 370, 378 (D.N.J. 2000). According to the official U.S. Courts website, for the twelve month period ending March 31, 2006, New Jersey had 5,240 cases with the median time interval to reach trial being 30.7 months. http://www.uscourts.gov/caseload2006/contents.html. Whereas the Eastern District of Virginia had 2,909 cases with the median time interval to reach trial being 9.6 months during the same time period. Id. Furthermore, the Eastern District of Virginia "implemented the 'rocket docket' under which a case will be tried within 180 days from the date of filing." New England Machinery Inc., v. Conagra Pet Products Co., 827 F.Supp. 732, 734 (M.D. Fla. 1993).

Second, to evaluate the burden of imposing jury duty on the forum's residents and the forum's interest in the outcome of this litigation, the court's must first determine "the locus of the alleged culpable conduct . . . and the connection of the conduct to the plaintiff's chosen forum." Van Cauwenberghe v. Baird, 486 U.S. 517, 528 (1988). This dispute is based in contract with Plaintiff alleging breach of contract, breach of the implied covenant of good faith

and fair dealing, that the terms of the contract were unconscionable, and that Defendant engaged in unfair business practices. (Compl. Count 1-4.) New Jersey residents would not be unduly burdened by jury duty since New Jersey courts recognize a policy interest in protecting franchisees. See Winer Motors Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666, 671-73 (App.Div. 1986) (holding that the state in which the franchisee is located has a policy interest in governing the relations between the parties).

Finally, the "'governing law' factor is to be accorded little weight in a motion to transfer venue because federal courts are deemed capable of applying the law of other states." Astor Holdings, Inc. v. Roski, 2002 WL 72936 at *13 (S.D.N.Y. Jan. 17, 2002). The outcome of this factor cannot outweigh the other more significant factors that favor transfer to the Eastern District of Virginia.

### IV. Conclusion

This Court finds that the factors considered favor transfer. As such, the Court will grant Liberty's motion seeking transfer of the action to the United States District Court for the Eastern District of Virginia. An appropriate Order accompanies this Opinion.

    S/ Dennis M. Cavanaugh
    Dennis M. Cavanaugh, U.S.D.J.

Date:     August 20, 2007
Orig.:     Clerk
cc:     Counsel of Record
    The Honorable Mark Falk, U.S.M.J.
    File